UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOBBY CUNDIFF,

    Plaintiff,                               Hon. Janet T. Neff

v.                                              Case No. 1:18-cv-1249

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Income Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## BACKGROUND

Plaintiff was 42 years of age on his alleged disability onset date. (PageID.229). He possesses an eighth grade education and worked previously as a material handler, general laborer, salvage laborer, mechanic helper, and overnight stocker. (PageID.54-55, 68). Plaintiff applied for benefits on November 27, 2015, alleging that he had been disabled since June 20, 2011, due to a learning disability, depression, hypertension, open-heart surgery, punctured lung, shortness of breath, and the placement of a rod in his right leg. (PageID.229-41, 266).

Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.102-227). On October 2, 2017, Plaintiff appeared before ALJ Colleen Mamelka, with testimony being offered by Plaintiff, Plaintiff's brother-in-law, and a vocational expert. (PageID.62-100). In a written decision dated January 29, 2018, the ALJ determined that Plaintiff was not disabled. (PageID.43-57). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.29-33). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2014. (PageID.45); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v.*

---

[1]  1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

*Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) status post open heart surgery for traumatic rupture of the right atrial/inferior vena cava; (2) status post ORIF [open reduction and internal fixation] of right femur fracture; (3) multiple rib fractures; (4) right acetabular fracture; (5) bilateral carpal tunnel syndrome; (6) obesity; (7) depression; (8) anxiety; and (9) intellectual disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.   (PageID.45-49).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) he can never crouch, crawl, or kneel; (2) he can never climb ladders, ropes, or scaffolds; (3) he can never work near unprotected heights or moving machinery; (4) he can occasionally climb ramps and stairs with an assistive device; (5) he can frequently perform fingering and feeling activities; (6) he can perform simple, routine, and repetitive tasks; (7) he can occasionally interact with co-workers and the general public; and (8) he is limited to work that does not require written communications.   (PageID.49).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.   While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a

claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).

This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert. The vocational expert testified that there existed approximately 95,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.91-97). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

I.  **Medical Evidence**

In addition to Plaintiff's testimony at the administrative hearing, the administrative record contains copies of medical treatment records and statements by Plaintiff. The ALJ described this evidence as follows:

> Prior to July 25, 2015, the claimant had minimal physical impairments, with records noting only a remote left ankle fracture with surgical repair in 2007; at a January 2013 consultative examination, the claimant exhibited only a mild limp on the left side, without other abnormalities (Ex. 1F). The claimant presents relatively few records prior to a motor vehicle accident in late July 2015; the records presented prior to the accident are unremarkable, except that the claimant was observed to be walking/climbing on and off curbs in the parking lot without slowing or apparent discomfort (Ex. 2F, 3F, 6F).

On July 25, 2015, the claimant was intoxicated and collided with a tree at a high rate of speed. Because of this collision, the claimant sustained a traumatic rupture of the right atrium inferior vena cava, cardiac tamponade, multiple rib fractures, right acetabular fracture, and a right femur fracture (Ex. 5F). The claimant underwent surgery to perform a primary repair of the 3 cm laceration of the right atrial inferior vena cava junction and right tube thoracotomy on the day of the collision; the claimant tolerated the uncomplicated surgery well and was taken to the intensive care unit in stable condition (Ex. 5F/74-76). The following day, the claimant underwent reduction and intramedullary nail fixation of the right femur; again, the claimant tolerated the uncomplicated procedure well and was transferred to the intensive care unit in stable condition (Ex. 5F/80-82).

Approximately ten days after the collision, the claimant was transferred to the inpatient rehabilitation unit, where he was expected to remain for ten days with extensive rehabilitative therapy. After only three days, the claimant was discharged from inpatient rehabilitation, and was noted to have made excellent progress and was able to ambulate 180 feet with a 2-wheeled walker (Ex 5F/100-103). Following discharge, the claimant followed with his cardiac surgeon Jerry Pratt, MD, who remarked that the claimant was progressing as expected and had a 20-pound lifting restriction for approximately another month (Ex. 7F). Since March 2016, the claimant has not exhibited an abnormal cardiovascular or peripheral vascular examination (Ex. 9F, 11F, 12F).

Less than one year after his accident, the claimant attended a consultative physical examination with Molly Rossknecht, DO. At the consultative examination, the claimant was observed to use a cane for ambulation and had at least a moderate right-sided limp; he exhibited a slightly reduced range of motion in the lumbar spine, right hip and right knee, slightly reduced strength in the right lower extremity only, mild difficulty getting on and off the exam table and heel and toe walking, and more difficulty squatting (Ex. 8F).

The claimant began reporting left upper extremity weakness and numbness and exhibited a positive result on the Phalen's and Tinel's tests, but exhibited a full range of motion in both upper extremities, a strong grip (right greater than left) (Ex. 11F). A nerve conduction study completed in March 2017, revealed

bilateral mild carpal tunnel syndrome, slightly worse on the left and most motor and axonal type (Ex. 11F/24). However, wrist, hand, and digit strength has remained 5/5 throughout; it was recommended that the claimant begin physical therapy (Ex. 11F).

The claimant has gained a significant amount of weight following his accident. At a recent examination, the claimant was measured at 5 feet, 9 inches tall and weighed 211 pounds, resulting in a body mass index of 31.2, which the National Institutes of Health classifies as obese (Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults, NIH Publication No. 98-4083) (Ex. 11F).

Although the claimant has alleged continuing problems associated with a right leg fracture, right acetabular fracture, multiple rib fractures, heart problems, obesity, and carpal tunnel syndrome with disabling consequences, physical examinations suggest that the claimant was capable of work activity consistent with the residual functional capacity adopted herein. Corresponding records from Exhibits 1F through 14F showed no radiographic or clinical results reflecting debilitating pathology of the heart or extremities. Approximately three months prior to the accident the claimant reported that he was employed and doing well with his job; additionally just one month after the car accident, the claimant reported to Tamara Rouse, NP that he tried to go back to work as an asphalt worker that week, but his boss would not let him (Ex. 6F). Despite his complaints, his physical examinations have primarily been normal, with the exception of slight range of motion deficits of his right hip, right knee, and dorsolumbar spine and decreased strength in the right lower extremity. Although the claimant uses an assistive device for ambulation, he exhibited only mild difficulty getting on and off the exam table, and heel and toe walking, but more difficulty with squatting. Medications help to manage his pain complaints. Although he reported that his medications made him tired, the evidence overall does not disclose serious pharmacology side effects that would not be accommodated by the adopted residual functional capacity. The undersigned has appropriately accounted for the claimant's physical conditions with a reduced range of sedentary exertion work and the limitations with lifting, sitting, standing, walking, postural activities and limited exposure to hazards.

The medical evidence of record also shows that the claimant's mental impairments warrant the limitations as described in the

residual functional capacity assessment adopted herein, but without disabling consequences.

The claimant has a history of depression and anxiety for which he takes medications, prescribed by his primary care physician (Ex. 6F). The claimant's treatment history is remarkable for occasional anxious and fearful thoughts and depressed mood; however, the claimant reports compliance with his medications and regular improvement (Ex. 6F, 11F). The claimant attended a consultative mental status examination in April 2016 with Samantha Wheeler, PhD, who offered an impression that the claimant exhibited the signs and symptoms most consistent with caffeine induced anxiety disorder with onset during intoxication (Ex. 10F). The claimant recently attended an independent psychological evaluation to determine the claimant's adaptive functioning ability. At this examination, the claimant was unable to complete written forms prior to the examination and relied upon his sister-in-law to do so; he also relied upon her to formulate responses to questions (Ex. 14F). The claimant completed a depression and anxiety screening, both of which resulted in scores indicative of severe depression and anxiety (Ex. 14F).

During a January 2013 consultative cognitive exam with Craig Brown, EdD, the claimant reported that he has difficulty with reading and writing and that his math skills are fair, but not good (Ex. 2F). The claimant was administered a Wechsler Adult Intelligence Scale-IV (WAIS-IV) and the results appeared to be valid, but the examiner was uncertain if the claimant was completely truthful in responding to the questions asked (Ex. 6F). The results of the WAIS-IV showed claimant to have a Full-Scale IQ of 64 and a Verbal Comprehension score of 63; the examiner determined that the claimant's scores were indicative of intellectual disorder (mild mental retardation) (Ex. 6F).

The claimant reported that he was enrolled in special education classes through the ninth grade, which he did not complete; however, the education records provided do not reflect the same (Ex. 8E). The claimant both reported and testified that he cannot read or write at all, yet in January 2013, he reported only difficulty doing so and in February 2016 he reported that he can read and write okay (Ex. 4E, 3F, 8F, Hearing Transcript). In the past the claimant reported that he has the ability to make change and pay bills (sometimes with assistance and if he has money) and was able to correctly answer simple addition problems.

> However, at the hearing, he testified that his sister-in-law pays all of his bills and goes shopping with him to ensure accuracy in getting the correct items and amount of change (Ex. 2F, 10F, Hearing Transcript). The claimant's statements regarding his abilities and history have been inconsistent throughout the record. The claimant reports the inability get along in our society without help, yet he has been living independently with relatively minimal assistance and has worked in semi-skilled jobs prior to his alleged onset date, including a mechanic assistant and overnight stocker. While the claimant's representative argued that in light of the accident he has greater limitations, the evidence fails to establish that the claimant's adaptive functioning with regard to cognitive ability has declined (Hearing Transcript). The claimant can prepare his own simple meals, only needs a pillbox as a reminder to take his medications, and has appeared well groomed with appropriate hygiene at medical appointments and examinations - with the exception of having body odor at the consultative examination in 2013 (Ex. 1F-14F, Hearing Transcript).
>
> The claimant also has a history of alcohol abuse, with inconsistent reporting of abstinence. In 2013, the claimant reported that he was in sustained remission; however, treatment records from 2014 report daily use and the claimant was intoxicated at the time of his motor vehicle collision causing hospitalization in July 2015 (Ex. 2F, 5F, 6F). The claimant testified that he stopped drinking after this accident, but additional treatment records indicate that this is not the case; records reflect at least occasional alcohol use thereafter (Ex. 11F, 12F, Hearing Transcript). In 2016, the consultative examiner offered an impression after a comprehensive examination and interview with the claimant that the claimant exhibited signs of caffeine induced anxiety disorder with onset during intoxication (Ex. 10F). There has not been a clear period of abstinence to evaluate symptom improvement. Additionally, there is no indication in the evidence of record that abstention would definitely render any of his symptoms less severe. The undersigned therefore concludes that the claimant's alcohol abuse is not material to the determination of disability.

(PageID.50-53).

**II.        Listing of Impairments – Section 12.05**

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff asserts that he is entitled to relief because he satisfies the requirements of section 12.05(B) (Intellectual Disorder) of the Listing of Impairments. The ALJ found that Plaintiff's impairments did not meet the requirements of this (or any other) listing. To satisfy the requirements of Section 12.05(B) of the Listings, Plaintiff must satisfy three requirements:

> (1) a valid full-scale IQ score of 70 or below or a valid full-scale IQ score of 71-75 accompanied by a valid verbal or performance IQ score of 70 or below;
>
> (2) an extreme limitation of one, or a marked limitation of two, of the following areas of mental functioning:
>
>> (a) understanding, remembering, or applying information;
>>
>> (b) interacting with others;
>>
>> (c) concentration, persistence, and maintaining pace; and
>>
>> (d) adapting or managing oneself; AND
>
> (3) the disorder began prior to the attainment of age 22.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05.

In support of his decision that Plaintiff did not satisfy the requirements of this Listing, the ALJ focused on the second requirement, concluding that Plaintiff experienced only moderate or mild limitations in these four areas of functioning. (PageID.47-48). Specifically, the ALJ concluded as follows:

In understanding, remembering, or applying information, the claimant has a *moderate* limitation. The claimant alleges he cannot read or write at all, yet in January 2013, he reported only difficulty doing so and in February 2016 he reported that he can read and write okay (Ex. 4E, 3F, 8F, Hearing Transcript). The claimant also contends that he was enrolled in special education classes in all subjects except physical education; however, the school records indicate that the claimant was enrolled in general education classes (Ex. 8E, Hearing Transcript). The school records presented also reflect that in seventh grade the claimant received a "B+" in Pre-Voc, a "C-" in language arts, a "C+" in basic math, and lower grades in social studies, science and art, he attained nearly half of the math objectives, but very few reading objectives, and received satisfactory grades in grade levels one through four (Ex. 8F). The claimant reported that his ability to follow oral instructions depends on how well the instructor explains what is to be done (Ex. 4E). The claimant testified that he failed his driver's exam twice before passing it on the third attempt when it was read to him (Hearing Transcript).

In interacting with others, the claimant has a *moderate* limitation. Consultative examiner, Craig Brown, EdD remarked that the claimant only gave glancing eye contact, did not seem to want to be friendly, and simply walked out of the examination when it was complete without saying anything (Ex. 2F). However, no other treating or examining source has made remarks of a similar nature, but rather they routinely remark that he is friendly and cooperative. The claimant reported that he has been fired from a past job due to conflicts with his boss, is socially isolative so as not to get irritated by others, and that he has been criminally charged with assault in the past (Ex. 4E, 10F, 14F). The claimant does report having a few close friends, one being his sister-in-law, who also assists with other things from time to time.

With regard to concentrating, persisting, or maintaining pace, the claimant has a *moderate* limitation. On the consultative mental status examination, the claimant could not subtract 7s from 100, multiply 6x8, or 9x9, but did answer 6+7 and 9+8 correctly; the examiner remarked that the claimant had the ability to maintain attention and concentration (Ex. 10F). The record indicates that the claimant used to have a driver's license and drive a vehicle, until it was revoked after he found guilty of a drunk driving offense (Ex. 8F, 10F, 14F, Hearing Transcript). Even minimal operation of a motor vehicle requires substantial attention and

-12-

> concentration, in order to remember, understand and carry out complex functions, and to integrate such complex functions into independent situational awareness and projective judgment every few seconds. It is certainly not a simple and routine set of functions.
>
> As for adapting or managing oneself, the claimant has experienced a *mild* limitation. The claimant lives alone, can maintain his own personal hygiene, complete household chores, and prepare simple meals for himself. While the record indicates that he does have some assistance from his sister-in-law with paying bills (although the claimant's testimony seems to indicate that this is because she is financially supporting him), he reported that he can and did pay his own bills without significant difficulty in the past. The claimant testified that his sister-in-law also goes grocery shopping with him to ensure that he purchases the proper items. (Ex. 4E, 2F, 8F, 10F, 14F, Hearing Transcript).

(PageID.47-48).

The ALJ examined the evidence in detail and her assessment is consistent with the evidence of record. Plaintiff's argument to the contrary is simply that the ALJ should have weighed the evidence differently which is not a valid basis for relief. The burden rests with Plaintiff to demonstrate that he satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002). The ALJ evaluated the evidence of record and determined that Plaintiff failed to meet his burden. The ALJ's decision is supported by substantial evidence.

### III.        Listing of Impairments – Section 1.03

Plaintiff next argues that the ALJ's decision that he does not satisfy Section 1.03 of the Listings is not supported by substantial evidence. Section 1.03 of the Listing concerns "Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or

is not expected to occur, within 12 months of onset." 20 C.F.R., Part 404, Subpart P, Appendix 1 § 1.03.

> Section 1.00(B)(2)(b) provides, in relevant part, as follows:
>
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.00.

> In support of her conclusion that Plaintiff did not satisfy this Listing, the ALJ stated:
>
> While the claimant does use a cane for ambulation, the evidence of record indicates that the claimant has a normal gait and station, but was observed to walk with a moderate limp, and had only mild difficulties heel and toe walking (Ex. 8F). Treatment records from his primary care physician, indicates that he has exhibited unremarkable physical examinations since shortly after a motor vehicle collision in July 2015. Accordingly, the claimant's impairments do not meet or equal in severity the criteria of listings 1.02A, 1.03, or 1.06.

(PageID.46).

The ALJ's conclusion in this regard is consistent with the evidence of record and supported by substantial evidence. Plaintiff's cursory argument that the ALJ should have weighed the evidence differently is insufficient to meet his burden. Accordingly, this argument is rejected.

**IV.     Medical Opinion Evidence**

On August 23, 2017, Dr. Aajay Shah, reported that Plaintiff was incapable of performing "even low stress jobs." (PageID.588). The doctor also reported that during an 8-hour workday, Plaintiff could sit and stand/walk for less than 2 hours each. (PageID.589). The ALJ, however, afforded "little weight" to Dr. Shah's opinions. Plaintiff argues that he is entitled to relief because the ALJ failed to afford appropriate weight to the opinions of his treating physician.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Secretary of Health and Human Services*, 1991 WL

229979 at *2 (6th Cir., Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Ibid.* (citation omitted). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Ibid.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d

1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

The ALJ discounted Dr. Shah's opinion on the ground that it was "extreme and inconsistent with the medical evidence of record," including Dr. Shah's own treatment notes. This conclusion is supported by substantial evidence as the ALJ's discussion of the medical evidence makes clear. In support of his argument, Plaintiff does not identify any medical evidence or articulate how such undermines the ALJ's analysis. Instead, Plaintiff repeatedly asserts in conclusory fashion that the ALJ improperly assessed Dr. Shah's opinion and implicitly invites this Court to reweigh the evidence which it cannot do. Accordingly, this argument is rejected.

V.        **The ALJ Properly Evaluated Plaintiff's Obesity**

Plaintiff argues that the ALJ failed to properly consider his obesity when assessing his RFC. Plaintiff asserts that the ALJ failed to comply with Social Security Ruling 02-1p, Titles II and XVI: Evaluation of Obesity, 2000 WL 628049 (S.S.R., Sept. 12, 2002). As the Sixth Circuit has held, Social Security Ruling 02-1p "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Commissioner of Social Security*, 359 Fed. Appx. 574, 577 (6th Cir., Dec. 22, 2009); *see also*, *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 412 (6th Cir., Jan. 31, 2006) ("[i]t is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants").

The ALJ recognized that Plaintiff is obese and analyzed the entire record in assessing Plaintiff's residual functional capacity. The evidence, however, does not support the

argument that Plaintiff's obesity, either alone or in combination with her other impairments, impairs him to an extent greater than that recognized by the ALJ. The Court finds that the ALJ's RFC determination sufficiently accounts for Plaintiff's obesity and the limitations reasonably imposed by such. Accordingly, this argument is rejected.

### CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: October 7, 2019         /s/ Ellen S. Carmody
                              ELLEN S. CARMODY
                              United States Magistrate Judge